### W. G. MYERS *v.* R. R. ESTELL.

1. RECOUPMENT IN ACTION FOR PRICE OF LAND.—In an action for the price of land sold, the purchaser may set up in defence the fact that the vendor defrauded him by false representations as to the quantity, quality, condition, boundaries, or other matter injuriously affecting the subject matter of the contract; and no offer to rescind the contract is necessary to entitle him to defend to the extent that he has suffered by the fraud.

2. RECOUPMENT CONTRADISTINGUISHED FROM SET-OFF.—Recoupment is contradistinguished from set-off in these three essential particulars: 1. In being confined to

matters arising out of and connected with the transaction, or contract, upon which the suit is brought; 2. In having no regard to whether or not such matter be liquidated or unliquidated; 3. That the judgment is not the subject of statutory regulation, but controlled by the rules of the common law.

3. RULE OF DAMAGES IN RECOUPMENT.—The same rule of damages prevails in case of recoupment, as would be adopted in assessing damages in an action for them by defendant.

4. RECOUPMENT NOT CONFINED TO CASES WHERE FRAUD IS IMPUTED, BUT APPLICABLE AS WELL TO BREACH OF CONTRACT WITHOUT FRAUD.—The doctrine of recoupment is also applicable where the defendant imputes no fraud, and only complains that there has been a breach of contract on the part of the plaintiff.

ERROR to the circuit court of Bolivar county. SHACKLEFORD, J.

*Ellett & Phelan,* for plaintiff in error.

1. It is well settled everywhere that damages sustained by a vendee by reason of false or fraudulent representations or concealments by the vendor, may be set up as a defence to an action on the securities given for the purchase money, and deducted or recouped therefrom. Water., Set-off, p. 570, § 513; Adams v. Wylie, 1 Nott & McCord, 78; Turner v. Fludd, 1 McCord, 121; Johnson v. Wideman, Rice, 325; Gibson v. Marquis, 29 Ala. 668; Foster v. Rogers, 27 ib. 602; Hollay v. Younge, 27 ib. 203; Munroe v. Pritchett, 16 ib. 788; Sanford v. Handy, 23 Wend. 260; Allaire v. Whitney, 1 Hill, 484; 4 Denio, 554; Van Epps v. Harrison, 5 Hill, 63; 27 Maine, 308; 30 ib. 202; 18 Mo. 368.

2. This is merely in pursuance of the well settled principle that " fraud or deceit, accompanied with damage, is a good cause of action." Pasley v. Freeman, 3 T. R. 51; 2 Smith's Lead. Cas. 55; Russell v. Clark's ex'rs, 7 Cranch, 69; Upton v. Vail, 6 Johns. 181.

3. In all such cases the matter may be relied on as a defence against an action for the purchase money, on the principle of avoiding circuity of action. Simmons v. Cutreer, 12 S. & M. 584; Brown v. Harris, 2 ib. 84; Ellis v. Martin, 2 ib. 187; Anderson v. Hill, 12 ib. 679.

4. The numerous cases in Mississippi, holding that any misrepresentation or concealment in relation to land,

either as to quality or title, by which the purchaser is imposed on, is fraudulent and affords ground for rescinding the contract altogether, do not hold that a bill to rescind is the only remedy. They recognize such misrepresentations and concealments as frauds, for which an action will lie, and they give the relief in the form in which it was sought in those cases, by a recission of· the contract. Parham v. Randolph, 4 How. 451; Liddell v. Sims, 9 S. & M. 610; English v. Benedict, 25 Miss. Rep. 167; Osward v. McGehee, 28 ib. 340, 351; Rimer v. Dugan, 39 ib. 482.

5. On the contrary, it is stated as a general principle, that a vendor, guilty of such conduct, is responsible for it; and they apply the principle to cases of bills for recission. But these, and all the other cases cited, also admit the concurrent jurisdiction of courts of law in all cases of fraud, and concede the right of the vendee to take advantage of it as a defence against the purchase money in an action at law.

6. A distinction is sometimes made between an action for the price of property sold and an action on the note or other security given for the price. In the former case, a partial failure of consideration may be set up as a defence, as, though the property was of some value, it was not what it was warranted or represented to be. But in the latter case, there can be no defence unless there was a total failure of consideration; the goods being of no value, and the vendee has repudiated the contract by returning the goods. Chitty, Cont. 402, 637, 1 Pars. Cont. 462.

7. But this distinction is not recognized to any extent by the American courts, and in an action on a note given for goods sold, evidence of false representations as to the quality or character of the articles sold, may be given to reduce the damages without a return of the article. 1 Pars. Cont. 465, cases cited in notes; Chitty Cont. 402, note 1, 664, note 1; Harrington v. Stratton

22 Pick. 510; Mixer v. Coburn, 11 Met. 559–561; 2 Wend. 431; 3 ib. 236; 4 ib. 483; 23 Pick. 286.

*Yergers & Nugent*, for defendent in error,

Criticised the structure of the pleas, arguing their insufficiency, as not being in bar of the whole action, and not distinctly specifying to how much of plaintiff's demand they were severally pleaded, and as being in other respects informal and insufficient.

If properly framed, the pleas, taken together, associated and amalgamated, shorn of superfluities, with all proper additions and protractions, do not present, we respectfully suggest and submit, any good ground of defence to the action. We accept for this portion of our argument the law cited by the learned counsel for the plaintiff in error. In the case of Van Epps v. Harrison, 5 Hill, 63, the vendor had sold lands upon certain alleged false and fraudulent representations. The defendant was sued upon his bond given for his interest in the land sold, and pleaded in bar the representations made by the vendor. The appellate court, in deciding the question, say: "In contracts of sale which have been fully executed on the part of the vendor by the delivery or conveyance of the thing sold, no fraud on his part in making the contract can operate as a complete bar to an action for the price (or purchase money), unless the thing sold was absolutely worthless, or the vendor has returned or reconveyed the property on the discovery of the fraud. When sued for the price the vendee may in general recoup damages; but while he retains the property he cannot treat the contract as wholly void and refuse to pay anything. By retaining the property he affirms the validity of the contract, and can be entitled to nothing more than the damages to which he has sustained by reason of the fraud. When he offers to prove fraud as a bar to the action, instead of offering it in abatement of the damages, he asked too much, and the

evidence was properly rejected for that reason." In discussing the question as to whether fraud can be proved in reduction of the damages, the court came to the conclusion that, under the statute laws of New York, it could.    In speaking of frauds in connection with the sale of lands the court says : " Common prudence requires of the vendee to ascertain the truth of, such assertions before he acts.    *    *    *    If the buyer trusts to representations which were not calculated to impose upon a man of ordinary prudence, or if he neglects the means of information easily within his reach, it is bette: that he should suffer the consequences of his own folly, than to give him an action against the seller."    No action will lie in cases " where the purchaser might, by the exercise of common prudence, have ascertained the truth and save himself from injury."    The vendee must show deceit was practiced, for the purpose of putting him off his guard.    The measure of damage, the court say, must be limited just as it would have been on the day after the contract was made.    All this under an express statute to allow such a defence.

In the case of Munroe v. Patchett, 16 Ala. 785, cited by Judge Ellett, in speaking of fraudulent representations, on page 789, the court say : " They must be as to a material fact operating as an inducement to the purchaser, and upon which the purchaser had a right to rely, and by which he was actually deceived.    Such representations must not be mere matter of opinion, or in respect to facts equally open to the observation of both parties, and concerning which the purchaser, had he exercised ordinary prudence, could have obtained correct knowledge.    If the purchaser blindly trusts when he should not, and closes his eyes when ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, *violanti non fit injuria.*

Applying the law as thus laid down to the pleas, and they fail.    Myers retained the property, and did not

offer to return it, and it devolved upon him to show and
state that the property was worthless, or that he had
reconveyed it. We have no statute here authorizing the
recoupment of damages against the purchase money of
land as in New York, and if there were he could prove
the damages sustained by reason of the fraud; and that
only in abatement of the purchase money for the land,
and not as a bar to a recovery, *in toto*. The means of
information were within his reach, and he neglected
them; he might have ascertained the truth and
saved himself. He has not averred deceit for the
purpose of putting him off his guard. The measure
of damages is not stated as the law requires.
What was the measure of damages in this case? It must
be limited just as it would have been on the day after
the contract was made. 5 Hill, 63. He must have
stated in his pleas something showing that he had a
right to rely upon the representations, and that they
were in respect to facts not equally open to the obser-
vation of both parties, and concerning which he could
not have obtained correct knowledge had he exercised
ordinary prudence. He blindly hinted when he should
not, and closed his eyes when it was his duty to see. 16
Ala. 785. He saw the lines standing along the river
front; he knew that the whole Mississippi delta had
been deposited by the river floods, and stood in the
place of what was an arm of the sea; he knew that
before the earth could have been deposited, it must have
been held in solution by superincumbent water; he
knew that when the waves of the river once flowed they
might in time again roll; or if he did not know these
things, he might easily have ascertained them. And not
only this, but that from the river bank to the base of
the hills there is, on the average, an inclined plane, so
that the difference in elevation at the very base of the
hills, is not less than fifteen or twenty feet. As to him

the maxim quoted applies.    Oswald v. McGhee, 28
Miss. 354; 1 Smith's Lead Cas. 302.

What was his duty upon discovering the fraud?
Forthwith to give notice to his vendor, and to be
content in that notice of the use he intended to make
of it.    If he failed in this, he has lost all his remedy.
He discovered the fraud, if any, in the spring of 1867,
and from that time until he was sued in 1871, we heard
nothing of him.    His pleas show no notice.    Upon this
point we call the court's attention to the brief filed in
the chancery cause between the same parties, a copy of
which is herewith submitted.    See 3 Pet. 201; 1 S. & M.
Ch. 134; 35 Miss. Rep. 590; 33 ib. 215.

The learned counsel for plaintiff in error starts out
into the broad statement : "It is everywhere well settled
that damages sustained by a vendee by reason of false
or fraudulent representations or concealments by the
vendor, may be set up as a defence to an action on the
security given for the purchase money, and deducted or
recouped therefrom," and quotes Waterman on Set-off, p.
570, § 513, for his authority.    Fortunately for the court,
the authorities upon which Mr. Waterman relies are also
quoted, and to them we look to ascertain the propriety
of his conclusion.    Right here it is well enough to
remark that this case is different from any other ever
brought before this court ; it stands by itself; in no
other case has the bold faced attempt ever been made
to off-set unliquidated damages, the result of fraudulent
representations, against a note given for the purchase
money of land, and thus pay it, while the vendor com-
placently retained possession.    All other cases are bills
in equity for recission, as this should have been, or suits
in which the fraud rendered the property purchased of
no value at all.    To these last the measure of damages
was just such as laid down by the Alabama courts.

In examining the authorities cited, we are forced to
go to the sources of authority relied upon in the several

cases, so that the court may see just what was decided from time to time. The first case is that of Runyon v. Nichols, 11 Johns. 547. Here an attorney sued for his fee. The plea was negligence on the part of the lawyer; the lower court ruled out evidence thereof; the appellate court reversed the judgment below, saying they had doubts as to whether the defence should be allowed. The case was resumed on another point. The next case is Beecker & Beecker v. Vroonan, 13 Johns. 301. V. sold B. & B. a mare for $35, which mare he represented to be sound and healthy, well knowing that she was sick and diseased. The defendants below offered to prove that the mare was of very little value, but the evidence was rejected because it did not go to the entire consideration. The appellate court reversed this ruling, saying in argument, the established rule in cases like the present is, that fraud may be given in evidence as a defence to the whole demand, or in abatement of it, according to the circumstances of the case. The case in 11 Johns. is cited to sustain the court; the same judge delivered both opinions.

The next case is Reab v. McAllister, 8 Wend. 109. Here a cooking stove had been sold upon a warranty, and defendant in the court below offered to prove a breach, and that he had offered to return the stove to his vendor when he discovered that the warranty had been broken. The court held that under the act of 1813, the defendant had a right to off-set the damages, though unliquidated, growing out of breach of warranty, against the plaintiff's account.

The cases in 13 Johns. and 8 Wend. are cited to sustain the decision of the court in Allain v. Whitney, 1 Hill, 484, in which case the facts are that A. rented W. a lot in New York for $1,000, payable quarterly, and W. was induced to sign the agreement by the representation of A., that the devised premises comprehended a certain other lot, which belonged to the city of New

York.   To protect his possession, he leased the other lot
from the corporation for a stated price, and was allowed
to abate plaintiff's demand to that extent.   The court
say a good deal in argument, but their statements must
be restricted to the facts in the case.   For one thing,
they say: " Nothing short of a release and satisfaction
will bar the remedy of a party deceased, though a re-
tention of possession, after discovery, will go in
mitigation of damages."   When this case again came
before the court in 4 Denio, 557, they say:   "The
defence was allowable, although the defendant had
accepted the premises with knowledge of the defective
title.   A party defrauded may stand to the bargain
after he has discovered the fraud and renew dam-
ages (liquidated) on account of it, or he may rescind
the contract and recover back what he has paid."   All of
these cases turn upon the statute laws of the state of
New York, and, as the court will perceive, are not even
in principle assimilated to the present case.

In Adams v. Wylie, 1 Nott & McCord, 78, the land
sold was represented as containing 294 acres, and only
contained 202 acres.   The vendee was allowed an abate-
ment of the purchase money for the difference.   In
Tunno v. Fludd, 1 McCord, 121, a master in chancery
sold land, representing the tract to contain 547 acres,
when it did not contain that much, and the defendant
was allowed an abatement for the deficiency.   In both
these cases the off-set was fixed and liquidated.   The
land was sold for a stated price per acre, the deficiency
in quantity was ascertained, and a simple calculation
liquidated the off-set.   *Id certum est quod certum reddi
potest.*

In Munroe v. Pritchett, 16 Ala. 785, land was sold
upon a " false and fraudulent " representation that a
certain line of the tract would embrace within it a cer-
tain quantity of good land ; and the only point made
and decided in the case was that it made no difference

whether defendant knew the statement to be false or not. The vendor was allowed an abatement for the "good land" represented as being within the limits of the land sold, but which was not.

Holly v. Young, 27 Ala. 203, was a case in which a suit was brought upon a note given for the purchase money of a tract of land held under a deed with covenants of general warranty, and upon which there rested a prior vendor's lien. The lien was enforced against the vendee, and he pleaded the amount thereof as a set-off against the vendor's claim. The plea was sustained, the court saying, on page 206, under our decision, based upon the old law, the demand set up in this plea would not have been a good set-off, for the reason that the contract out of which it arose was one of unliquidated damages, but the law in this respect has been changed by the code, which allows "unliquidated demands not sounding in damages merely" to be set-off. When the demand is of such a character, as under the rules of law, does not admit of a reduction to a certain money standard, then it sounds in damages merely.

Foster v. Rogers, 27 Ala. 602, was a case in which fifty-two bales of cotton were sold by samples, which indicated the cotton to be "strictly good middling to middling fair." The cotton was sent by the vendor to New Orleans for sale. There it was ascertained that the cotton in the middle of the bales was wet and worthless, and the bales themselves water packed. The vendee sued the vendor for the difference between what the cotton sold for and what it would have brought had it come up to the samples.

In Gibson v. Marquis and wife, 29 Ala. 668, G. sold Mrs. M. a tract of land on 30th Sept., 1854, and took her notes, payable January, 1856, for the purchase money. Suits were promptly brought, and the plea was that the land had been represented as not being subject to over-

flow, when it was in fact, and that the decrease in value was $800. The court decided, upon the authority of the cases in 17 and 27 Ala., that the defence was allowable under the statutes by way of set-off.

In Sandford v. Handy, 23 Wend. 264, the plea was *non est factum* to an action upon articles of agreement for the establishment of a joint stock company, accompanied with notice of special matter under the plea. Edward Sandford, agent of plaintiff, represented the land, which by agreement was to be sold to the company, as costing $115,000, when it really only cost $80,000. Signatures to the agreement were thus obtained. The court below adjudged that plaintiff was not bound by the representations made, because Edward Sandford was a special agent only to procure signatures to the agreement. The appellate court reversed this ruling, but expressly reserved any opinion as to the effect and consequences of the alleged fraud until they could have the benefit of another argument. In Van Epps v. Hill, this and all other New York cases, the defence was allowed under the statute of 1873.

The cases in 29 Maine, 308, and 30 ib., 202, are cases of partial failure of consideration of notes given for the purchase money of land, growing out of false representations as to the quantity of timber upon it, and these defences were allowed. In the case in 18 Mo. 369, the vendee, who was living in Kentucky, relied upon representations of the vendor, who lived in Missouri, and was induced thereby to buy the land in Missouri. We presume all these cases turned upon the statutes of these states, though, from the reports, we are unable to discover the reason for the decisions. There are, however, none of them applicable to the case at bar.

The case in New York, cited, in which the court, arguing, say that nothing short of a release or satisfaction will bar a right to an action growing out of a false and fraudulent representation, we submit, to this extent, cer-

tainly, is not law.    It seems to us that a waiver, and a repeated and long continued waiver of such representation or fraud, which in a court of equity will bar a recission, must *ex vi termini* necessarily purge the contract of all its infirmities, and destroy the right of action upon the fraud itself.

The cases cited do not sustain the third point made by the plaintiff in error, and we think that all the authorities in this state *applicable to the case at bar*, go to the extent of determining that the vendee's only remedy was by bill for recission of the contract.

In conclusion, we may safely remark that there is not a single case in all the American reports in which a defence sounding merely in damages, in the absence of express statutory enactments, was ever allowed to an action for the purchase money of land.    In this case there is no attempt to plead or prove anything else but prior unliquidated, speculative and hypothetical damages.    In view of all the facts in the case to allow Myers to do so, would be opening the door for the perpetration of a greater fraud than that of which he complains.

PEYTON, C. J..

This was an action of *assumpsit*, founded on three promissory notes, one for $5,000, and the others for $17,500 each, executed by the plaintiff in error, payable to the defendant in error.

In this action, the plaintiff in error pleaded the general issue, and three special pleas, alleging that the consideration of the notes sued on, for the greater part, was the sale and conveyance by the defendant in error, to the plaintiff in error, of a tract of land of about 1,067 acres, situated in Bolivar county; and in the first of said special pleas, that the defendant in error, at the time of the sale, warranted that said lands, by the building of a levee across the break on the Vick front, would, so long as the

levee stood, be free from overflow by the waters of the Mississippi river, except that in case of a very high and long continued water in that river, a very small portion of the back lands on said tract, might be inundated. And the plea avers that said levee across the break on the Vick front, was built as the defendant in error indicated it should be, and the plaintiff in error, relying solely upon said warranty, made said purchase, and says that, in the year 1867, the year succeeding his purchase, with said cross levee standing unbroken, all of said lands were overflowed by the said river, whereby the said warranty was broken, and the plaintiff in error damaged to the amount of $35,000. And the other two special pleas are substantially the same as the first, except, that they charge that the plaintiff was induced to purchase said lands by the false and fraudulent representations of the defendant in error, with regard to the overflow of the waters from said river, by which he is injured and hath sustained damage to the amount of $35,000.

A demurrer was sustained to these pleas, and leave given to answer over to the declaration. Whereupon the plaintiff filed two other special pleas, in substance the same as the former, and the defendant in error demurred to these pleas also, and the demurrer was sustained and judgment rendered in favor of the defendant in error. And hence the case comes to this court by writ of error.

If, in consequence of false representations of the defendant in error, the plaintiff in error was induced to purchase the land, relying upon those representations with reference to the overflow, and actually sustained damage by the overflow of waters from the Mississippi river, he had a right to deduct those damages from the amount sued for in this action. He undoubtedly had this right, if the allegations and averments in his pleas are true, and these are admitted by the demurrer.

But it is insisted, on the part of the defendant in error,

that even had the plaintiff in error sustained any damages by inundation from the river, they are unliquidated, and cannot, therefore, be deducted from the amount sought to be recovered.

It must be conceded that unliquidated damages are not the subject of set-off. Yet there is a natural equity as to claims arising out of the same transaction, that one claim should compensate the other, and that the balance only should be recovered. It is a salutary principle to permit parties to adjust the whole controversy in one action, and out of this has grown the doctrine of recoupment, which is now almost universally applied. It tends to promote justice, and prevent needless litigation. It avoids circuity of action, and multiplicity of suits. It adjusts by one action adverse claims growing out of the same subject matter. Such claims can, generally, be as well, if not better, settled in one action than in several. One demand is considered as reduced or liquidated by the other, and the surplus is regarded as the real cause of action. The defendant's claim is deducted from that of the plaintiff, and the latter recovers the excess only. The defendant is not allowed to recover any balance. He uses his claim in mitigation of damages only. He may recoup to the extent of the plaintiff's damages; but he cannot, as in the case of a set-off, recover any excess in his favor. In another respect, this kind of defence is unlike that of a set-off. The cross demand must grow out of the same transaction, and proceed from the same subject matter as the plaintiff's right of action.

This mode of defence is of modern origin in this country, founded on a liberal application of the rules of law, which allow such deduction as a substitute for a cross action on a breach of contract, to avoid a circuity of action. The same rule of damages, therefore, must be adopted, as would be adopted in assessing damages in such cross action. Goodwin v. Morse, 9 Met. 278.

This modern doctrine of recoupment is but a liberal and beneficent improvement upon the old doctrine of failure of consideration. It looks through the whole contract, treating it as an entirety, and treating the things done, and stipulated to be done on each side, as the consideration for the things done, and stipulated to be done, on the other. When either party seeks redress for the breach of stipulations in his favor, it sums up the grievances on each side, instead of the plaintiff's side only—strikes a balance, and gives the difference to the plaintiff, if it is in his favor. Lufburrow v. Henderson, 30 Ga. 482.

This doctrine is well settled in New York. It is there held that when the demands of both parties spring out of the same contract or transaction, the defendant may recoup, although the damages on both sides are unliquidated; but he can only set off where the demands of both parties are liquidated, or capable of being ascertained by calculation. It was formerly supposed that there could be recoupment only where some fraud was imputed to the plaintiff in violation of the contract on which the action is founded; but it is now well settled that the doctrine is also applicable where the defendant imputes no fraud, and only complains that there has been a breach of contract on the part of the plaintiff. The defendant has his election whether he will set up his claim in answer to the plaintiff's demand, or resort to a cross action; and whatever may be the amount of his damages, he can only set them up by way of abatement, either in whole or in part, of the plaintiff's demand. As before stated, he cannot, as in case of a set-off, go beyond that, and have a balance certified in his favor. And as this defence must arise out of the same transaction, there can, therefore, be no recoupment by setting up the breach of an independent contract on the part of the plaintiff. Batterman v. Pierce, 3 Hill, 171; Hensdell v. Weed, Denio, 172.

In the case of the Steamboat Wellsville v. Geisse, 3 Ohio St. Rep. 333, the right of a defendant, in a proper case, and under a proper state of pleadings, to reduce, by way of recoupment, the damages sought to be recovered by the plaintiff, was directly considered and fully recognized as the law of Ohio. The court say : " It is a right so reasonable in itself, so necessary to the simple and economical administration of justice, and so entirely congenial 'to our system of jurisprudence, that, however, doubted or denied in some parts of the state, it has, in general, commended itself to our courts, and become well established." And this doctrine has been reaffirmed in the case of Upton & Co. v. Julian & Co., 7 Ohio St. Rep. 95. ·

It has been repeatedly decided by learned and able judges in this country, not in virtue of any statutory provision, but upon principles of justice and convenience, and with a view of preventing litigation and expense, that where fraud has occurred in obtaining, or in the performance of, contracts, or where there has been a failure of consideration, total or partial, or a breach of warranty, fraudulent or otherwise, all or any of these facts may be relied on in defence by a party when sued upon such contract, in all cases where the title to real estate is not involved ; and that he shall not be driven to assert them either for protection or as a ground for compensation in a cross action.

And although there is some diversity of judicial opinion upon the subject, it is believed to be the better opinion, that this defence cannot, in general, be made where the partial failure relates to title to real estate merely, and this is predicated upon the exclusive and peculiar jurisdiction of equity over the title to real estate in causing it to be perfected, and upon the further consideration that the vendee, in general, sustains no injury by a partial defect of title so long as he retains possession, as also because it would be without the prin-

ciple upon which recoupment is allowed in the common law courts, inasmuch as for want of that peculiar jurisdiction of the equity courts to cause defective titles to be perfected, they could not do final and complete justice in the premises and terminate all possible further litigation touching the contract.

When the failure relates to title merely, so long as the vendee holds possession he has a title maturing daily, which may, by mere efflux of time, ultimately ripen, and he cannot, therefore, in his conscience, say that he has received no advantage from the vendor, under whom he came into the possession, and this makes it difficult to say that the consideration has indeed totally failed. And we have seen that partial failure of title as to land is not within the principle of the common law, under the auspices of which recoupment has been recognized and grown up in her courts for want of power in the common law courts to compel the perfection of title, which alone exists in the equity courts. But in all other cases, whether the failure of consideration be total or partial, resulting from fraud or misrepresentation of quantity or quality, or other matter injuriously affecting the subject matter of the contract, the damages arising therefrom may be recouped in an action at law for the recovery of the consideration money. Wheat *v.* Dolson, 7 Eng. 699 ; McHardy v. Wadsworth, 8 Michigan, 349.

In the case of Hammatt v. Emerson, 27 Me. 308, it was held that a partial failure of the title to real estate conveyed, has not been permitted to operate as a defence *pro tanto* to a note received in payment for it. In such cases, the parties have been considered as entitled to that remedy, which was secured to them by their own agreements in the covenants contained in their deeds, as best suited to the fair adjustment of their rights.

When the purchaser obtains a perfect title to the

whole estate, and yet finds the estate to be different from what it was fraudulently represented to be, he can have no remedy upon any covenants usually found in conveyances. Not having contemplated such an event, he could not be expected to have provided a remedy for it by any covenant or special contract. He must, therefore, rely upon the remedy which the law may provide. That he finds an action on the case suited to enable him to recover damages for the injury thereby occasioned, when sued for the consideration money, he should be allowed to prove the amount of such damage and have it applied to reduce the amount sought to be recovered, and the principles of law and rules of evidence applicable to an action on the case, would guide the court and jury in making the estimate. The rights of the parties may be as well and as fully determined in one as in two suits; circuity of action may thereby be avoided, and should the vendor prove to be insolvent, the rights of the injured vendee may be better secured.

In the case of House v. Marshall, 18 Mo. 368, it was held that where the defendant does not wish to rescind the contract, he may be allowed to recoup the amount of injury and damage sustained by him by reason of the deceit put on him by the plaintiff. There is no necessity to compel the defendant to resort to his cross action when he can obtain all that the law allows him by way of recoupment of the damages which he has sustained by reason of the plaintiff's fraud in the transaction which gives rise to the suit.

In an action for the price of land sold, the purchaser may set up in defence the fact that the vendor defrauded him by false representations as to the quantity, quality, condition or boundaries of the land. An offer to rescind the contract is not necessary in order to entitle the purchaser to maintain an action for damages for the fraud. It is necessary where he seeks to recover back the consideration paid; then he must offer to

return what he has received, and rescind the contract. The same rule applies if the party seeks, by way of defence, to avoid the whole contract, on the ground of fraud, where his damages occasioned by the fraud are less than the plaintiff would otherwise be entitled to recover. But no offer to rescind is necessary to entitle the party defrauded to maintain an action for damages for the fraud, nor to entitle him to defend to the extent that he has suffered by the fraud, that is, to the extent that he would be entitled to recover in an action for damages founded on the fraud. The question may as well be tried in an action for the price, and the rights of the parties be settled in one suit, as to allow the plaintiff to recover the whole stipulated price, and then permit the other party to recover back the whole or a part in an action for the fraud. It is the policy of the law to avoid a multiplicity of suits. Kelly v. Pember, 35 Vt. 183.

There are some authorities to the effect that where the failure of consideration or damages sought to be deducted are partial, and of an uncertain character, and to be assessed by the jury, and not a mere matter of computation, such partial defence cannot be received in an action on a promissory note. But it is difficult to perceive any good reason why such defence ought not be allowed in actions on notes and bills of exchange, as well as in other actions. There is no foundation in reason and justice for such a rule. It is sustained by no principle of policy or convenience. While a promissory note remains in the hands of the original contracting parties, there is no sound reason why it should receive any more protection or immunity in this respect than any other contract.

The principle of allowing the parties to adjust the whole controversy in one action, though commended by its natural equity, it must be conceded, has not been applied with entire uniformity. It is, however, believed

to be now too firmly settled to be shaken by a few straggling cases, or the occasional *dicta* which seem to look in the opposite direction.

Recoupment is contra-distinguished from set-off in these three essential particulars : 1. In being confined to matters arising out of, and connected with, the transaction or contract upon which the suit is brought ; 2. In having no regard to whether or not such matter be liquidated or unliquidated ; and 3. That the judgment is not the subject of statutory regulation, but controlled by the rules of the common law.

It is said that it is where fraud entered into, but did not equitably go to, the entire prevention of a recovery by the plaintiff, that we find the first cases of the defence in question in the common law courts of England.

The defence by recoupment was an innovation upon, or departure from, the strict rules of law, sanctioned by the courts for the purpose of doing equity between parties, where it either could not be otherwise attained, or not without a circuitous and expensive process. And for that reason, courts favor this mode of defence rather than drive a party to a separate action.    Water. on Set-off and Recoup. 469 ; Clark v. Wildridge, 5 Ind. 175 ; Houston v. Young, 7 ib. 200

In the case under consideration, the special pleas were not in bar of the action, but of a partial failure of consideration, and this fact seems not to have attracted the attention of counsel.

We think the court below erred in sustaining the demurrer of the plaintiff below to the second, third and fourth pleas of the defendant below, and for that reason the judgment must be reversed, the demurrer overruled, and the cause remanded.