## R. R. ESTELL *v.* W. G. MYERS.

1. SALE. *Land. False representation. Rule of damages. Recoupment.*

Where there has been a false representation, in the sale of realty, as to the quality thereof, the rule is, in a judicial adjustment, to ascertain the actual, intrinsic value of the land sold, on the day of sale. Then ascertain what it would have been worth on that day, if it had in all respects answered to the representations on the faith of which it was purchased. Deduct the former sum from the latter. The remainder produced is the damage sustained by the purchaser; and this sum may be set off against the amount due, if the purchase-money remains unpaid, or may be made the basis of an independent action for deceit. But the contract price must always be taken as the value of the property as represented, unless a higher or lower value be clearly established. This rule is almost universally applied to sales of chattels; but as to realty, it is not applied where the false representations have reference to quantity or title.

2. SAME. *Land. Recoupment. Damages, how credited.*

Where the purchaser of land is allowed to recoup the amount of damage sustained by him in consequence of misrepresentations of the vendor in the sale thereof, against a demand for the purchase-money, such amount should be deducted from the purchase-money as of the day of the purchase.

APPEAL from the Chancery Court of Bolivar County.

Hon. J. W. SHIELDS, Special Chancellor, by agreement of the parties, Hon. Charles Clark, then chancellor, being disqualified.

The bill in this cause was filed for the purpose of subjecting a tract of land, constituting a valuable plantation near the Mississippi River, to the payment of a balance of the purchase-money thereof, alleged to be $40,000. The defendant claimed

that in making the purchase he had relied upon certain representations of the complainant as to the land being exempt from overflow, and that in consequence of such reliance he had been greatly damaged; and he sought to recoup his damage, thus sustained, against the balance of the purchase-money. When this cause was here before, it was decided that Estell, the complainant in the bill, had made misrepresentations in his sale of the land to Myers, the defendant in the case. This court then determined the character of the misrepresentations; and it was held that Myers was entitled to recoup, against the balance of purchase-money due, all damages sustained by reason of his reliance upon such misrepresentations. The cause was remanded for further proof, and from the subsequent decree of the chancellor this appeal was taken. The character of the representation adjudged in the previous opinion to be false, and the elements of the damage which it was held that Myers was entitled to recoup, are restated in the opinion of the court contained in this report. The points assigned for error are also sufficiently indicated in the opinion of the court.

*W. L. Nugent*, for the appellant.

1. The court below erred in adjudging that the contract price agreed to be paid for the land was to be taken and held as fixing the value of the land, if as represented. The current of authority upon this point restricts the damages in cases like this, where any are allowed, to the difference between the value of the land as represented and its actual value, without reference to the contract price. Field on Dam. 421; *Buddington* v. *Henry*, 48 N. H. 273; *Gales* v. *Reynolds*, 13 Iowa, 1; *Moberly* v. *Alexander*, 19 Iowa, 162; *Staley* v. *Murphy*, 47 Ill. 241; *Myers* v. *Estell*, 47 Miss. 4; *Godwin* v. *Morse*, 9 Metc. 278; *Foster* v. *Rogers*, 27 Ala. 602; *Milton* v. *Rowland*, 11 Ala. 732; *Masterton* v. *Major*, 7 Hill, 61.

2. The Chancery Court erred in deducting the difference in values out of the purchase-money, as of the maturity of the notes. The amount due the defendant at the time of the hearing should have been ascertained, and from that the sum to

be recouped should have been deducted.    No interest on damages should have been allowed, directly or indirectly.    *Ormsby* v. *Johnson*, 1 B. Mon. 80 ; *Green* v. *Garcia*, 3 La. An. 702 ; *Holmes* v. *Rankin*, 17 Barb. 454 ; *Gilpin* v. *Consequa*, Pet. C. Ct. 88 ; *Ham* v. *Sawyer*, 38 Me. 37 ; *Sergeant* v. *Hampden*, 38 Me. 581 ; *McIlvain* v. *Wilkins*, 12 N. H. 475 ; *Platt* v. *Brand*, 26 Mich. 173 ; *Estell* v. *Myers*, 47 Miss. 4 ; *Van Buren* v. *Van Grosbeck*, 4 Cow. 497 ; *Meriwether* v. *Bird*, 9 Ga. 595.

*Percy & Yerger*, on the same side, filed a brief, making the same points as stated above, and discussing them at length.

*W. L. Nugent*, of counsel for the appellant, argued the case orally.

*Harris & George*, for the appellee.

1. The question here is not whether Myers is entitled to recover the difference between the contract price and the real value, on the one hand, or the difference between the value of the land as represented, and as it turned out to be, on the other. We admit that the latter is the thing to be determined.    But how are we to ascertain the value of the land as represented? In all cases, the price agreed upon is held to be strong evidence of the value of the thing as represented, and will not be departed from except upon the clearest proof.    Sedgw. on Dam., marg. p. 290.    In order to get the value of a thing, we must ascertain its " market value," unless we accept the price fixed by the parties in the trade.    In the sales of personalty, there can rarely ever be any trouble in finding a prototype in the market to represent the thing as sold.    But the evidence in this case shows that there is, and can be, no prototype of the land in controversy, by which to ascertain the value of the ideal place existing only in the representations of Estell.    The contract price is competent and strong evidence, in all cases, of the value of the thing as represented, and in this case it is the only competent evidence.    *Lawton* v. *Chase*, 108 Mass. 238–241 ; *Miller* v. *Smith*, 112 Mass. 470 ; *Chandler* v. *Jamaica Pond Aqueduct*, 122 Mass. 307.    The price agreed on between

the buyer and the seller, both being practical men, of fair intelligence, is the highest evidence of value, because it is fixed by the parties with reference to the market price, and also with reference to exceptional qualities of the particular property ; so that the price agreed on between such persons is the result of intelligent judgment, at the time, on the true elements of value.

2. The damage to Myers, occasioned by the difference between the value of the land as represented and its actual value, should be deducted from the purchase-money as of the day of the sale, and subsequent damages should be deducted as of the dates of their occurrence. *Estell v. Myers*, 47 Miss. 18 ; *Lufburrow* v. *Henderson*, 30 Ga. 482 ; *Meriwether* v. *Bird*, 9 Ga. 594 ; *The Commonwealth* v. *Clarkson*, 1 Rawle, 290 ; Waterman on Set-off, sect. 584 ; Sedgw. on Dam. 378 ; *Whitfield* v. *Whitfield*, 40 Miss. 352 ; *Estell* v. *Myers*, 54 Miss. 12.

*B. F. Trimble*, on the same side, filed a lengthy brief, discussing the points in the case.

*J. Z. George*, of counsel for the appellee, argued the case orally.

CHALMERS, J., delivered the opinion of the court.

When the litigation between these parties was before us as an action at law (47 Miss. 4), it was adjudged that if there had been a misrepresentation as to the liability to overflow of the plantation sold, the damage sustained by the purchaser in consequence of such misrepresentation might be set off, by way of recoupment, against the purchase-money.

When the litigation came before us a second time, as a chancery suit (54 Miss. 174), it was adjudged that there had been such misrepresentation, and the precise character of it was determined.   It was declared to consist in the false statement of Estell to Myers that the plantation was subject to overflow only by water coming through or over the levee known as the Vick Front Levee, — so called because it was the levee in front of the Vick plantation, in the rear of which the place sold by Estell was situate.

This statement was ascertained to be false; and it was shown that the land was really liable to be submerged, in whole or in part, by any break in the levees below or above the Vick front for a distance of fifteen or twenty miles. It was therefore adjudged that Myers was entitled to recoup, against the price which he had agreed to pay, any and all damage which he could show he had sustained by reason of his reliance upon this false statement. The elements of this damage were declared to consist of these four items: First, the difference in the price of the land; second, the loss of crops in the year succeeding the purchase; third, the death of, or injury to, stock and cattle; fourth, the expense of repairing fences and removing logs and driftwood deposited on the place by the flood. The reclamation for damage under any and all of these heads, however, was limited to that inflicted by water coming elsewhere than through or over the Vick Front Levee; because, as to water from that source, there was no warranty.

The case was remanded for further proof, and it comes now before us on appeal from the decree of the chancellor, rendered after both parties had taken and submitted the most exhaustive testimony on all the points indicated in the former opinion. We are entirely satisfied with the conclusions, both of law and of fact, announced in our former adjudications; and even if we were not, they must be treated as conclusive of the rights of the parties in this litigation.

It only remains, therefore, to determine whether the chancellor has rightly applied the principles of law heretofore announced, to the facts developed by the additional proof. He allowed Myers the sum of $120 for damage to his fencing, caused by water which did not come by or through the Vick front levee. He denied all claims of damage to the crop, or to the animals on the place; and in these conclusions we agree with him. It is conclusively shown that the entire loss of crop, and of animals, and of fencing (except that portion of the fence for which the claim was allowed), was caused by the water which poured through the break in the Vick Front

Levee, and not by that which, escaping through the breaks in the levees above, backed up on the place from the rear.

In estimating the damage sustained by reason of the difference in the value of the land as it was represented to be, and as it actually was, the chancellor construed our former adjudication as laying down the rule that the actual value, when ascertained, was to be deducted from the contract price, and that the remainder thus produced would represent the damage sustained, and was to be set off against the sum due on the notes given for the purchase-money.

Such was the intimation given in the first opinion delivered when the case was last here, and a decree laying down that method of computation was entered. But, a reargument having been granted, that decree was vacated; and in the second opinion, it was said that the difference between the land, " if it had been as represented, and its *actual* value, must be allowed."

In the first opinion, we assumed, in the absence of proof, that the contract price was the actual value; and such is not only the ordinary rule of law, but it is usually the true standard in point of fact, because, in most cases, the price fixed by the parties will approximate, at least, to the true value as the thing was represented and believed to be. Indeed, the contract price was formerly regarded by the courts as conclusively establishing the actual worth of the thing sold, if it was as represented to be. The more modern, and undoubtedly the sounder, rule is, to treat it as *primâ facie* indicative of the value as represented, and leave it open to either party to show that it was either more or less than the commodity would have been worth if it· had in all respects answered the representations concerning it. Sedgw. on Dam. (4th ed.) 325, side p. 287; Field on Dam., sect. 281 *et seq.*

The rule, now almost universal as to chattels, applies also to realty, where there has been a false representation as to quality, though it is different where there is a deficiency in quantity or title. Where the defect is in quantity or title, the price paid, or contracted to be paid, is the standard. Where the misrepresentation is in regard to quality, the measure of damages—

as in sales of chattels — is the difference between the land as warranted and its actual value. Field on Dam., sect. 512, and cases cited.

This rule, while guarding against injustice to either party, leaves to each the benefit of his superior skill as a trader. The man who has bought a chattel or a tract of land, represented as possessing certain qualities, has obtained all the redress he is entitled to for a false representation, when he is allowed to deduct from the price which he agreed to pay, the difference between the actual value of the thing, and what would have been its market value if it had come up to the representations on the faith of which he purchased.

If he has agreed to pay more than the thing as represented would have been worth, it is his own folly. He cannot insist that the price which that folly induced him to put upon it shall be taken, in opposition to the truth, as the standard by which the measure of values and of damages shall be determined.

The true rule, therefore, is, to ascertain the actual, intrinsic value of the thing sold, on the day of sale ; then ascertain what it would have been worth on that day if it had in all respects answered to the representations on the faith of which it was purchased ; deduct the one sum from the other : the remainder produced is the damage sustained ; and this sum may be set off against the amount due, if the price remains unpaid, or may be made the basis of an independent action for deceit. The contract price, however, will always be taken as the value of the thing as represented, unless a higher or lower value be clearly established. The chancellor fixed the actual value of the plantation, in this case, on the day of sale, at $27,500, and we think his conclusion warranted by the evidence. The contract price of the land was dependent upon an ascertainment of the value of the personal property ,sold with it. The chancellor fixed the value of the personalty at $8,500 ; and this estimate, which we approve, determines the contract price of the land to have been $62,500.

The chancellor, conceiving himself bound so to do by our previous adjudication, deducted the actual value ($27,500)

from the contract price ($62,500), and held that the vendee was entitled to recoup the difference ($35,000). This was erroneous, if the proof clearly establishes that the place, as represented (that is to say, dependent alone upon the Vick Front Levee for protection from overflow), would have been worth less than the contract price. We think that this is unmistakably proven ; and this we say, in full recognition of the principle of law which not only makes the contract price the presumptive value of the place as represented, but forbids us to depart from it except when manifest injustice will be wrought by adhering to it. The plantation, as represented, would have been dependent alone for protection upon a levee a mile and a quarter in length. It was really dependent upon a line of levees covering a river-front of fifteen or twenty miles ; and while all the witnesses, who are Mississippi River planters, of unusual intelligence, concur in saying that the difference in value of a plantation of a thousand acres (five hundred and fifty acres cleared) thus located, and one situated as Estell represented this to be, was great, none of them approximate in their estimates to the extravagant difference of $35,000. The weight of the evidence would perhaps fix the difference at $15,000 ; but, having adopted the chancellor's estimate of the intrinsic value at $27,500, we feel compelled to adhere as closely to the contract price, in fixing what would have been its value if it had been as represented, as the testimony will justify. We therefore fix that value at $50,000, and in so doing we adopt the highest estimate of the special friend of the vendee, who had lived with him on the place for some months, and had been for many years a planter in the immediate neighborhood. The difference between the actual value ($27,500) and the value as represented ($50,000) is $22,500. To this add the $120 allowed for damage to fencing, making $22,620 ; and this sum is allowed as damages, to be credited on the notes given for the purchase-money as of the date of their execution.

Decree reversed, and decree here as directed.

NOTE. — This case was decided, and the opinion delivered, before GEORGE, C. J., took his seat upon the bench.